[Cite as *In re I.N.*, 2021-Ohio-1406.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE I.N., ET AL.

Minor Children

[Appeal by S.K., Mother]

No. 110067

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 22, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD19900495, AD19900496, and AD19900497

***Appearances:***

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, for *appellee* Cuyahoga County Division of Children and Family Services.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, S.K. ("Mother"), appeals from a judgment granting permanent custody of her children to plaintiff-appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS"). In her sole assignment of error, Mother claims:

The trial court's denial of Appellant's request for a continuance was an abuse of discretion since no attempt was made to determine whether the Appellant would be able to attend the hearing due to Covid-19 protocols.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In February 2019, Mother's children, I.N., D.N., and F.N., were placed in the predispositional temporary custody of CCDCFS. One month later, CCDCFS filed an amended complaint seeking temporary custody of the children. Following a hearing in April 2019, the children were adjudicated dependent and placed in the temporary custody of CCDCFS.

{¶ 4} In October 2019, CCDCFS filed a motion to modify temporary custody to permanent custody. Thereafter, Mother failed to appear for pretrial hearings on December 6, 2019 and January 22, 2020, and trial was scheduled for March 11, 2020. Mother appeared in court on March 11, 2020, where she was arraigned on the motion for permanent custody, and trial was rescheduled. The trial date was rescheduled a second time due to a scheduling conflict. Ultimately, trial was set for September 25, 2020, and notice of the trial date was sent to Mother on August 19, 2020.

{¶ 5} Mother failed to appear for trial. Mother's trial counsel informed the court that she received information from the prosecutor, counsel for CCDCFS, that Mother had emailed the CCDCFS case worker at 3:00 a.m. that morning, stating she was caring for someone with coronavirus and had to quarantine for another week.

(Sept. 25, 2020, tr. 4.) Mother's lawyer explained that she took over the case from another public defender "a couple of weeks" before trial and that she tried to contact Mother by email and regular mail but never received a response. (Sept. 25, 2020, tr. 4-5.) Mother's counsel further explained:

> So when I got that email this morning, I emailed her, I texted her, I called her, and I've not heard back from her, so I don't know if she has documentation to verify that she should be quarantining, but I'm going to be asking for a continuance on her behalf because I just don't know, just based on the information that I received from [the prosecutor] this morning.

(Sept. 25, 2020, tr. 5.)

{¶ 6} The prosecutor opposed the motion for continuance, asserting that Mother's claim that she was quarantining lacked credibility. He noted that both the case worker and the guardian ad litem also doubted her and reminded the court that Mother made no effort to contact her new attorney. The prosecutor also found it suspicious that she emailed the case worker regarding her need to quarantine at 3:00 a.m. on the day of trial in response to an email sent by the case worker four days earlier. Finally, the prosecutor noted that the case had previously been continued, the motion for permanent custody had been pending for almost a year, and Mother had made no attempt to present herself by "alternative means through phone or video or otherwise." (Sept. 25, 2020, tr. 6-7.)

{¶ 7} Richard Summers ("Summers"), the children's guardian ad litem, expressed disbelief in Mother's quarantine claim. He told the court: "I always gave her the benefit of the doubt many, many times and have been burned many, many

times." (Sept. 25, 2020, tr. 7.) After describing his efforts to maintain contact with Mother during the pendency of the case, Summers again stated: "I don't find her to be credible anymore, your Honor." (Sept. 25, 2020, tr. 8.)

{¶ 8} Based on the statements of counsel and the guardian ad litem, the trial court denied Mother's request for a continuance. The court noted that Mother had failed to appear at previous hearings during the pendency of the permanent custody motion and stated: "I think it may be an 11th hour stall tactic. Call it what you want, but I don't think there's just reason to continue it at this point. These three children need some finality to this." (Sept. 25, 2020, tr. 8-9.)

{¶ 9} Selina Wright ("Wright"), an extended services social worker with CCDCFS, testified at trial that despite the fact that Mother was referred for treatment to address her issues with domestic violence and substance abuse, Mother failed to complete any of the offered services. She also failed to complete a mental health assessment. (Sept. 25, 2020, tr. 14-15.) According to Wright, Mother failed to maintain regular contact with CCDCFS and failed to visit her children for a period of many months. (Sept. 25, 2020, tr. 15, 24.)

{¶ 10} Summers recommended the court grant permanent custody of Mother's children to CCDCFS. Summers explained that

> every step of the way [Mother] has an excuse for why she doesn't do something. * * * And it seems no question this social worker has been unbelievable in trying to reach out to this person, to [Mother], and it's still just one excuse after another. Short of just not showing up at all, [Appellant] just – one excuse after the other.

(Sept. 25, 2020, tr. 33-34.)

{¶ 11} After considering the evidence presented, the trial court granted permanent custody of Mother's three children to CCDCFS. Mother now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 12} In the sole assignment of error, Mother argues the trial court abused its discretion in denying her motion for a continuance of the permanent custody trial.

{¶ 13} The decision to grant or deny a motion for a continuance rests in the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, Slip Opinion No. 2020-Ohio-6699, ¶ 19. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 14} The right to parent one's children is a fundamental right protected by the Due Process Clause of the United States and Ohio Constitutions. *In re M.W.*, 8th Dist. Cuyahoga No. 103705, 2016-Ohio-2948, ¶ 9. Thus, any restriction on that right must comport with due process. *In re Hockstok*, 98 Ohio St.3d 238, 2002-

Ohio-7208, 781 N.E.2d 971, ¶ 16.  At a minimum, due process requires notice and an opportunity to be heard.  *In re M.W.* at ¶ 9.

{¶ 15} However, a parent's right to be present at a custody hearing is not absolute.  *In re C.K.*, 8th Dist. Cuyahoga No. 108313, 2019-Ohio-4167, ¶ 20, citing *In re M.W.* at ¶ 9.  While courts must ensure that due process is provided in parental termination proceedings, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.).

{¶ 16} Any potential prejudice to a party denied a continuance is weighed against a trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* , 67 Ohio St.2d at 67, 423 N.E.2d 1078.  In permanent custody cases, the courts are also to be mindful of the best interests of the children and their need for stability and permanency.  *In re D.S.*, 8th Dist. Cuyahoga No. 101906, 2015-Ohio-2042 (holding that court may consider whether the need for permanency can be achieved without granting permanent custody).

{¶ 17} In *Unger*, the Ohio Supreme Court noted that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request

is denied." *Id.* at 67. The *Unger* court identified certain factors a court should consider in evaluating a motion for a continuance. These factors include:

> the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶ 18} Juv.R. 23 governs continuances in juvenile court and provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, further provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 19} Mother argues a continuance should have been granted pursuant to the then-applicable order of the Cuyahoga County Juvenile Court titled "Order Extending the Judicial Emergency and Continuity of Operations of the Court Due to Covid-19 pandemic" ("Juvenile Court order") and a more recent order of the Ohio Supreme Court dated December 16, 2020, titled Administrative Actions #2, 2020-Ohio-6726 ("Supreme Court order"). The Juvenile Court order expressly states that anyone who fails the available health screening required to enter the juvenile court

"may be excluded from admission" and that "[t]his public health emergency may be considered a finding of 'just cause' for continuances deemed necessary by assigned judges on a case-by-case basis." The Supreme Court order, which was issued after the trial had already taken place, provides that due to the dangers posed by Covid-19 and the need to maintain social distancing, courts may grant continuances or conduct trials remotely. Mother now claims the trial court erred in denying her motion for continuance "without making any inquiry regarding her condition as affected by a Covid-19 quarantine" and that "Appellant did not have a way to contact her attorney or the court." (Appellant's brief at 8.)

{¶ 20} However, Mother's trial counsel requested a continuance on the day of trial, not because she received communication from Mother requesting a continuance due to Covid-19, but because Mother sent an email to the case worker at 3:00 a.m. on the day of trial, indicating she would not be present due to her need to quarantine. Counsel explained that when she learned of Mother's email to the case worker, she emailed, texted, and called Mother to verify the alleged cause for her absence, but Mother never responded. (Sept. 25 2020, tr. 5.)

{¶ 21} CCDCFS, through counsel, objected to the requested continuance, arguing that Mother's claim of unavailability due to exposure to coronavirus was suspect, given that she had allegedly been quarantining for the last week but failed to notify anyone of her unavailability until 3:00 a.m. on the day of trial. Mother offered no explanation for her week-long delay in reporting her need to quarantine

and also made no effort to attend the trial by phone, video, or otherwise. (Sept. 25, 2020, tr. 6-7.)

{¶ 22} As previously stated, the children's guardian ad litem also expressed disbelief in Mother's quarantine claim, stating: "I don't find her to be credible, your Honor. I always gave her the benefit of the doubt many, many times and have been burned many, many times." (Sept. 25, 2020, tr. 7.)

{¶ 23} Mother's counsel was unable to provide any information in support of her oral motion for continuance at the start of trial. Counsel conceded that because Mother never responded to counsel's communications, counsel did not "know if she ha[d] documentation to verify that she should be quarantining[.]" (Sept. 25, 2020, tr. 5.) Mother, therefore, failed to demonstrate good cause for the continuance.

{¶ 24} Mother nevertheless argues that her phone had been broken three months earlier and "there was no evidence or testimony that [Mother's] phone had ever been repaired or replaced." (Appellant's brief at 3.) However, this claim is purely speculative. And, in any case, Mother's ability to email was clearly unaffected, yet Mother failed to communicate her alleged need for continuance until the day of trial.

{¶ 25} Although the Juvenile Court order and the Supreme Court's order might have justified a continuance for a verified Covid-19 exposure, there simply was no evidence to substantiate Mother's Covid-19 claim. To the contrary, the record demonstrates that Mother failed to communicate and cooperate with the court and counsel and that she failed to demonstrate good cause for a continuance.

We, therefore, find no abuse of discretion in the trial court's decision to deny Mother's last-minute request for a continuance.

{¶ 26} We recognize that Mother is appealing the trial court's decision to award permanent custody to CCDCFS. And after reviewing each child's case, we find that the trial court engaged in the proper analysis, considered the relevant best-interest factors required by R.C. 2151.414(D), and set forth multiple findings supporting its decision. Indeed, the record shows that Mother failed to complete domestic violence and substance abuse services, failed to complete a mental health assessment, and failed to maintain regular contact or to visit with the children for a period of many months. Therefore, even if Mother were granted a short continuance, it would not have changed the trial court's decision to award permanent custody of each child to CCDCFS.

{¶ 27} The sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR