[Cite as *In re K.C.*, 2025-Ohio-1110.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| K.C. | : | Hon. Andrew J. King, J. |
| | : | Hon. Robert G. Montgomery, J. |
| | : | |
| | : | Case No. 24 CAF 10 0062 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 23-01-0134 AB



JUDGMENT:                    Affirmed



DATE OF JUDGMENT:            March 28, 2025



APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

WILLIAM T. CRAMER                      JULI D. JONES
1554 Polaris Parkway                   Delaware County Dept. of Job and
Suite 325                                Family Services
Columbus, OH  43240                    145 North Union St., 2nd Floor
                                       Delaware, OH  43015

*Montgomery, J.*

**STATEMENT OF THE FACTS AND THE CASE**

**{¶1}** Appellant, the biological mother of minor child K.C. born on October 27, 2019 (hereinafter "child"), appeals the decision of the trial court terminating her parental rights and granting permanent custody of the child to Delaware County Department of Job and Family Services (hereinafter "Appellee").

**{¶2}** The child was previously placed in the temporary custody of Appellee in 2019. Appellee was concerned that the child was exposed to controlled substances in utero. Additionally, Appellee had concerns about Appellant's stability including mental health and substance abuse. The child was placed in the home of the current foster parents until Appellant regained custody of the child in 2021 and Appellee's case was closed.

**{¶3}** On December 7, 2022, Appellant appeared with the child at the emergency room and indicated that both had been sexually assaulted. It was determined that Appellant was experiencing a mental health crisis. Appellant tested positive for amphetamines and cocaine while at the hospital. A safety plan was implemented wherein a relative was to supervise Appellant and the child. A caseworker for Appellee witnessed Appellant and the child unsupervised during visits to Appellant's home. Appellant refused to submit to drug screens during this time period.

**{¶4}** On or about January 12, 2023, Appellee filed a Complaint in the Delaware County Juvenile Court, alleging that the child was a "dependent child" as defined by R.C. 2151.04(C), and a "neglected child" as defined by R.C. 2151.03(A)(2)(4). By Entry filed

on March 28, 2023, the child was adjudicated dependent based on Appellant's admissions and the allegation of neglect was dismissed. The court placed the child into the temporary custody of Appellee and granted Appellant and the child's father supervised visitation. (*Magistrate Decision Adjudication.*) On or about March 30, 2023, Appellee filed a Family Case Plan in which Appellant and the child's father were identified as having mental health, substance abuse, housing and income issues. These issues significantly and adversely affect Appellant's ability to properly parent and protect the child. No objections were filed to the Family Case Plan and it was approved and adopted by the trial court.

{¶5} A dispositional hearing was held on April 10, 2023, and the court ordered the child to remain in the temporary custody of Appellee. The trial court continued the case plan filed on March 30, 2023 and the prior court orders. (*Nunc Pro Tunc Magistrate Decision Disposition.*)

{¶6} On or about August 17, 2023 and October 9, 2023, Case Reviews were conducted and the court once again ordered that the child remain in the temporary custody of Appellee.

{¶7} On or about January 3, 2024, Appellee filed a Motion for Permanent Custody of the child. Another Case Review was conducted and the court determined that all prior dispositional orders shall remain in full force and effect. (*Magistrate's Decision Motion for Permanent Custody and Annual Review.)* An Annual Review was conducted by the court on February 12, 2024 and the trial court ruled that the prior dispositional orders shall remain in full force and effect. (*Judgment Entry Motion for Permanent Custody and Annual Case Review.)*

{¶8}   The Motion for Permanent custody proceeded to trial on September 6, 2024 and September 10, 2024.

{¶9}   During the course of the proceedings held on September 6, 2024 and September 10, 2024, the trial court heard testimony from Kayla Geiger, caseworker for Appellee; Valeria Bautista, social worker for Appellee; Brittany Webb, an Intensive Supervision Probation Officer; Elizabeth Aniakwa, Regional Supervisor for Maryhaven; Samantha Ruttman, Director of Little Buckeye Learning Center; Jennifer Overmyer, guardian ad litem of the child; a foster parent of the child; and the Appellant.

{¶10}  Kayla Geiger testified that Appellee first became involved with Appellant and the child in 2019 after the child's birth. There were concerns regarding Appellant's drug use and stability. Appellant worked with Appellee and she regained custody of the minor in 2021.

{¶11}  The current case was opened in December 2022. The child has been in the continuous custody of Appellee since January 26, 2023. A Family Case Plan was filed with the court in which Appellant was to complete an alcohol or other drug assessments and comply with treatment recommendations. Appellant completed the drug or alcohol assessments but has consistently failed to follow the treatment recommendations throughout the case. She repeatedly engaged in services, stopped participating and then started participating again. The Case Plan also ordered Appellant to submit to random drug and alcohol screens. Appellant refused to submit to requested screens on several occasions. Appellant was also to maintain suitable housing. Appellant lived in a one-bedroom camper with an unfinished plywood floor. During a home visit, Ms. Geiger found the camper to be dirty with dead bugs in the windows, cigarette butts on the floor and a

layer of grime on the appliances. Ms. Geiger opined that this housing was not suitable for the child. Appellant testified that at the time of the hearing, she was living with her uncle. However, this move occurred shortly before the beginning of the trial and Ms. Geiger did not have the opportunity to visit the uncle's home. Ms. Geiger testified that Appellant has not made substantial progress on the goals that the Case Plan set out for her.

{¶12} During the pendency of the instant case, Appellant was found guilty of F2 Burglary and was sentenced on July 24, 2024. As part of her sentence, she was placed on community control and delayed commitment to a Community-Based Correctional Facility. Appellant was ordered to meet with probation officer Brittany Webb one time per month and submit to random drug screens. In May, 20224 Appellant failed a drug screen was arrested and sentenced to jail for approximately three months. Appellant had four total violations while she was being supervised. (*Trial Transcript*, p.125)

{¶13} The child has been in the home of the current foster parents since January 2023. The child had previously been placed with the foster parents from January 2020 until October 2021. The child has resided with the foster parents for approximately four of her five years of life. The foster parents have three other children and the child is bonded with them. The foster parents would like to adopt the child.

{¶14} The court appointed a guardian ad litem for the child. The guardian ad litem met with the child every month and met with Appellant approximately seven times. The guardian ad litem testified that she believes Appellant has not met her case plan goals and that the Motion for Permanent Custody is in the best interest of the child.

{¶15} The child suffered second degree burns while in the temporary custody of Appellee and living with the foster parents. The incident was investigated and found to be an accident. The child remained in the home of the foster parents.

{¶16} The court held an in-camera interview of the child. The court did not learn any information that controverted the testimony presented at the trial.

{¶17} Appellant testified that she would like more time to work her case plan. Appellant did not file a written motion to continue.

{¶18} The trial court found by clear and convincing evidence that it is in the child's best interest to permanently terminate the parental rights of Appellant and the child's biological father and grant permanent custody to Appellee. The court further found that the child deserves permanency and stability. The trial court further found that the child has been in the temporary custody of Appellee for more than twelve consecutive months of a twenty-two-month period. Based upon these findings, the trial court granted Appellee's motion for permanent custody of K.C.

{¶19} Appellant filed a timely appeal to the trial court's decision, and sets forth the following assignment of error:

{¶20} "I. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE TRIAL COURT'S DECISION TO AWARD PERMANENT CUSTODY TO THE AGENCY RATHER THAN GRANT A SIX-MONTH EXTENSION WHERE APPELLANT HAD SHOWN RECENT PROGRESS AND NO PRIOR EXTENSIONS WERE GRANTED."

{¶21} The appellant submits that the trial court erred when it granted permanent custody of K.C. to Appellee. We disagree.

**STANDARD OF REVIEW**

{¶22} The Ohio Supreme Court recently addressed the standard of review in permanent custody cases in the case of *In re Z.C.*, 2023-Ohio-4703:

Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

The appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

\* \* \*

. . . sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*Id.* at ¶ 7-8, 11.

**{¶23}** The Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are "both quantitatively and qualitatively different." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence "is not a question of mathematics but depends on its *effect in inducing belief*" (emphasis sic), *Id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when "the evidence is legally sufficient to support the jury verdict as a matter of law." *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

**{¶24}** But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). *Id.* at ¶ 13-14.

## ANALYSIS

**{¶25}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶26}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and 2) that any of the following apply:

a)      The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

b)      the child is abandoned;

c)      the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

d)      the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶27}** R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the trial court found that R.C. 2151.414(B)(1)(a) and (d) factors applied.

**{¶28}** Appellee became the temporary custodian of the minor on January 26, 2023 and the Motion for Permanent Custody was filed on January 3, 2024, just shy of twelve months. The trial court calculated the months between the agency receiving custody to the date of the trial in finding that R.C.2151.141(1)(d) had been satisfied. Appellant argues in a footnote that the proper period of time the court should have used is between adjudication and the filing of the motion for permanent custody. Since this Court agrees with the trial court's finding that R.C. 2151.141(B)(1)(a) was satisfied we will not address this finding on appeal. R.C. 2151.141(B)(1)(a) and R.C. 2151.141(B)(1)(d) are alternative findings and each is independently sufficient to use as a basis to grant Appellee's motion for permanent custody.

**{¶29}** The trial court must consider all relevant evidence before determining that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the child

cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support the finding that the child cannot be placed with the parent within a reasonable time. See *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.

{¶30} R.C. 2151.414(E) states in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

1)      Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

**{¶31}** In this case, sufficient evidence was presented that the Appellant has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. Appellant continued to have positive drug screens, she had a long history of relapse and reincarceration, she was unemployed, and stable housing could not be confirmed. Appellee made reasonable efforts to reunite the child with Appellant and diligently acted to remedy the reasons for removal. Appellant's four periods of incarceration between October 2023 and September 2024 hindered these efforts.

**{¶32}** The guardian ad litem in this case filed a written report and offered testimony during the hearing. The guardian ad litem testified that it is in the child's best interest to grant permanent custody to Appellee. (*Trial Transcript*, p.55.) A caseworker for Appellee testified Appellant has not met her case plan goals and is not able to provide adequate care for the child. *Id.*

**{¶33}** Therefore, we affirm the trial court's finding that R.C.2151.141(B)(1) has been satisfied.

**{¶34}** Appellant's counsel made an oral motion at the onset of the hearing and again at the conclusion, requesting an extension of time for Appellant to work her case plan. (*Trial Transcript*, p.58.) The trial court denied this request and Appellant argues that that the trial court erred in refusing to grant her an extension of time. This argument is, however, unpersuasive. In order for a trial court to grant an extension of time, the court must find that there has been significant progress on the case plan and there is reasonable cause to believe that the child will be reunified during the period of extension. *In re McNab*, 2008-Ohio-1638, 36. Appellant failed to persuade the court that she could complete the Family Case Plan with additional time. Appellant made some efforts to engage in the case plan, however, she failed continuously and repeatedly to substantially remedy the conditions that caused K.C. to be placed outside her home. The trial court found that it was not in the child's best interest to keep her in "custodial limbo" and that she deserves permanency and stability. (*Judgment Entry*, p.16.) In permanent custody cases, the court must "be mindful of the best interests of the children and their need for stability and permanency." *In re I.N.*, 2021-Ohio-1406 (8th Dist.). Appellant did not file a written request to continue the hearing or extend time with the court. The trial court's decision to deny Appellant's oral motion for an extension of time was not unreasonable, arbitrary or an abuse of discretion.

**{¶35}** The trial court found that it is in the child's best interest to grant DCDJFS motion for permanent custody. The trial court found that "The child is bonded to the foster parents and foster family. The foster parents have provided for every need, both physical and medical, and have done everything possible to ensure the child has a robust and productive childhood at such a young age. These factors clearly demonstrate that it is in

the child's best interests to grant the DCDJFS Motion for Permanent Custody. R.C.2151.141(D)(1)." (*Judgment Entry*, Paragraph 11.)

## CONCLUSION

**{¶36}** Based upon the foregoing, we find that the trial court's decision to award permanent custody of K.C. to Appellee, Delaware County Department of Job and Family Services, was warranted, was in the best interest of K.C., was based upon competent, credible evidence, and was not against the manifest weight or sufficiency of the evidence. This Court has examined the record and finds the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. The evidence contained in the record supports the trial court's judgment. We, therefore, overrule Appellant's sole assignment of error and affirm the decision of the Delaware County Court of Common Pleas, Juvenile Division.

By: Montgomery, J.

Hoffman, P.J. and

King, J. concur.